CASE LOMBARDI & PETTIT
A LAW CORPORATION

JOHN R. DWYER, JR.          1445-0
Email: jdwyer@caselombardi.com
MARK G. VALENCIA          6783-0
Email: mvalencia@caselombardi.com
Pacific Guardian Center, Mauka Tower
737 Bishop Street, Suite 2600
Honolulu, Hawaii 96813
Tel. No.: (808) 547-5400
Fax No.: (808) 523-1888

Attorneys for Plaintiffs
**GARY CHILCOTT and DUDLEY CHILCOTT**

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| GARY CHILCOTT and DUDLEY CHILCOTT, individually, and derivatively as shareholders of HAWAII BIO-WASTE SYSTEMS, INC. <br><br> Plaintiffs, <br><br> vs. <br><br> KEVIN KONDO, MARY KONDO, and JACK MAGUIRE, <br><br> Defendants. <br><br> and <br><br> HAWAII BIO-WASTE SYSTEMS, INC., a Hawaii Corporation, <br><br> Nominal Defendant. | CIVIL NO.: _____ <br> (Derivative Action) <br><br> **COMPLAINT; SUMMONS IN A CIVIL ACTION** |

29836/1/2009164.4

## COMPLAINT

Plaintiffs **GARY CHILCOTT** ("Mr. Gary Chilcott") and **DUDLEY CHILCOTT** ("Mr. Dudley Chilcott") ("Mr. Gary Chilcott" and "Mr. Dudley Chilcott" may sometimes be collectively known as the "Chilcotts"), individually, and derivatively as shareholders of **Hawaii Bio-Waste Systems, Inc. ("HBWS")**, by and through their attorneys, Case Lombardi & Pettit, allege and aver as follows:

### JURISDICTION AND VENUE

1.    Material events occurred and the parties have conducted business within the jurisdiction of the United States District Court for the District of Hawaii.

2.    This Court has jurisdiction over this matter under 28 U.S.C. sections 1332(a)(1) and 2201 on the basis of diversity of citizenship, because the amount in controversy exceeds $75,000.00, the parties are citizens of different states, and there is an actual controversy between the parties.

3.    Venue in the District of Hawaii is proper under 28 U.S.C. section 1391(a) and (c), because events and transactions giving rise to this action occurred in the State of Hawaii.

4.    On or about November 7, 2014, the Chilcotts made a written demand (the "Demand") on the Defendants herein for HBWS to turn over all operational

business decisions of the Directors and Officers to an Independent Receiver and to take suitable action including seven (7) specific actions against the Defendants, who are persons who purport to be the Directors and/or Officers of HBWS.

5.   The Defendants have failed to carry out their fiduciary duties of care, of loyalty, and of good faith as set forth in the Demand, and have not acted independently; and because Defendants have not taken appropriate action, and no action has been filed against Defendants, the Chilcotts have determined that the Defendants have rejected their Demand.

6.   The Defendants have failed to properly account for and disgorge grossly excessive officer compensation, including annual compensation ranging from $386,064 in 2009 to $824,462 in 2014, which unreasonably exceeds the average comparable officer compensation ranging from $107,151 in 2009 to $151,797 in 2014.

7.   The Chilcotts allege that there are no independent or disinterested Directors on HBWS's Board of Directors, because the Directors / Defendants Mary and Kevin Kondo have a familial relationship (mother and son) and Defendant Jack Maguire is and was a lifelong and/or long term close friend of Dr. Gary Kondo and the Kondo family, and has a financial interest and benefit not shared by the Chilcotts, the minority stockholders.

8.   The Chilcotts are antagonistic to the HBWS Board of Directors.

## PARTIES

9.    MR. **GARY CHILCOTT** and MR. **DUDLEY CHILCOTT** are residents of Montana, and they or their wholly owned company, have been shareholders of HBWS since the late 1990s; and they have personally been shareholders of HBWS since mid-2010.

10.    Upon information and belief, Defendant **KEVIN KONDO** is a resident of Hawaii and is the Chief Executive Officer, President, Secretary, and a Director of HBWS.

11.    Upon information and belief, Defendant **MARY KONDO** is a resident of Hawaii and Vice-President and Director of HBWS.

12.    Upon information and belief, Defendant **JACK MAGUIRE** is a resident of Hawaii and Vice-President, Treasurer, and Director of HBWS. Defendants Kevin Kondo, Mary Kondo, and Jack Maguire are collectively referred to as "Defendants."

13.    Defendant HBWS is a Hawaii corporation with its principal place of business in Honolulu, Hawaii.

## FACTS COMMON TO ALL COUNTS

14.    HBWS was incorporated in 1991 to engage in the business of collecting, transporting, sterilizing, and disposing of hazardous medical waste.

15.    By accepting the positions of responsibility over HBWS's assets and operations as Directors and Officers of HBWS, and/or fiduciaries of HBWS, and because of their ability to control the business, corporate and financial affairs of HBWS, each of Defendants owes HBWS and its shareholders and/or to its minority stockholders (i) the duty to exercise care and diligence in the management and administration of the affairs of HBWS, and in the use and preservation of its property and assets; and/or (ii) the duty of loyalty, to put the interests of HBWS above their own financial interests; and/or (iii) the duty of candor, including full and candid disclosure of all material facts; and/or (iv) the duty of good faith; and/or (v) the duty to act faithfully and honestly on behalf of HBWS and its shareholders.

16.    Defendants owe a duty to HBWS and its shareholders to ensure that HBWS operates in compliance with the law and that HBWS does not engage in any unsafe, unsound, or illegal business practices.

17.    The conduct of Defendants involves knowing violations of their duties as Officers and Directors of HBWS, and the absence of good faith on their part, intentional non-disclosure and/or concealment of material facts of which Defendants were aware or should have been aware, and which posed a risk of serious injury and damages to HBWS.

18.   To discharge their duties, Defendants were required to exercise reasonable and prudent supervision over the management, policies, practices, controls, and financial and corporate affairs of HBWS.   By virtue of these obligations referred to above, Defendants were required, among other things, to:

   a.   manage, conduct, supervise and direct employees and consultants, and the businesses and affairs of HBWS in accordance with the law and HBWS by-laws, including following all corporate formalities as required by Hawaii state law;

   b.   neither violate nor knowingly or recklessly permit any Officer, Director, or employee of HBWS to violate applicable law, and to exercise reasonable control and supervision over such officers and employees;

   c.   remain informed as to how HBWS was, in fact, operating and/or following unsafe, imprudent, or unsound practices, to conduct a reasonable investigation and take steps to correct that condition or practice, including, but not limited to, maintaining and implementing an adequate system of financial controls to prevent waste;

   d.   supervise and monitor Officer, Director and consultant compensation and benefits;

   e.   maintain reasonable supervision and control of the income, assets, and expenses of HBWS; and to

   f.   fully and fairly disclose to the shareholders all material facts relating to HBWS and its actions.

19.   Defendants breached their duties of loyalty, full disclosure, due care, and/or good faith by, among other things, (i) failing to follow the corporate "norms" and/or formalities, (ii) failing to maintain complete books and records,

(iii) wasting corporate assets, (iv) failing to properly manage the financial affairs of HBWS, (v) intentionally not disclosing to and/or concealing material facts from the Chilcotts, (vi) failing to provide all shareholders with accurate information regarding ownership interests and transfers, and (vii) failing to provide all shareholders with information regarding the actual compensation and benefits paid to the Officers, Directors, employees and consultants.

20.     Further, Defendants also breached their duties of loyalty, full disclosure, due care and/or good faith by failing to restructure HBWS from a C-Corporation to an LLC or other entity that would be able to avoid double taxation on its profits, if HBWS paid its Directors and Officers and Consultants a reasonable (but not excessive) salary or compensation and then declared and distributed dividends to the shareholders from those profits; rather than fraudulently paying excessive compensation to Directors and Officers and family members, and by paying consulting fees to other shareholders (and other purported consultants) who had performed no consulting work or functions.

21.     By Defendants' actions and non-actions set forth above, Defendants are personally liable to HBWS and the Chilcotts, and HBWS and the Chilcotts are entitled to "pierce the corporate veil" of HBWS for numerous reasons, including but not limited to Defendants' failure to comply with the "corporate norms" and their disregard of legal corporate formalities, and as dominant and controlling

shareholders, by their treatment of the corporate assets as their own among other things.

22.    Before Sure-Way became a shareholder of HBWS, the then majority and controlling shareholder of HBWS (Dr. Gary Kondo) visited one of Sure-Way's operating hazardous waste plants on the mainland, and asked the Chilcotts to explain their Reusable Sharps Container system, and its operational, marketing, and competitive benefits, which was a FDA 510(k) approved Certified Medical System for the disposal of hazardous medical biological waste.

23.    Based on the Chilcotts' experience in the hazardous waste industry and the operational, marketing and competitive benefits of Sure-Way's/Chilcotts' Reusable Sharps Container System (the "Sharps Container System"), as the majority shareholder, Director, and President of HBWS, D. Kondo offered Sure-Way/Chilcotts a thirty-three and one-third percent (33 & 1/3%) interest in the common stock of HBWS so long as Sure-Way/Chilcott (i) would give HBWS the exclusive right to use the Sharps Container System in Hawaii, and (ii) as long as the Chilcotts provide HBWS with their knowledge and expertise as to how to design an efficient hazardous waste facility, and how to market and operate it using the Sharps Container System.

24.    The Chilcotts, through their wholly owned company (Sure-Way Systems, Inc. – hereafter "Sure-Way") accepted Dr. Kondo's offer, and in addition

agreed to make a substantial investment in HBWS in cash and equipment of approximately $235,000.00, including but not limited to (i) purchasing a specialized shredder and shipping it to Hawaii, (ii) advising, assisting, and explaining to and educating HBWS employees in Hawaii how to market and utilize the FDA 510(k) Approved and Certified Medical System as a profit generation center and a management device business, and (iii) by providing other technical advice regarding the collection, transportation, sterilization, and disposal of hazardous biochemical medical waste.

25.     Initially, the Chilcotts' thirty-three and one-third percent (33 & 1/3%) ownership interest in HBWS was held by the Chilcotts' wholly owned company, Sure-Way, but as a result of a sale and transfer of the stock of Sure-Way, Sure-Way's ownership interest in HBWS was retained by or transferred to the Chilcotts and HBWS was advised of the transfer of that shareholder interest to the Chilcotts.

26.     No stock certificates were ever issued to Sure-Way or to either of the Chilcotts.

27.     The Chilcotts assisted HBWS in creating plans to build and develop a new plant, and advising HBWS on other technical issues relating to the collection, transportation, sterilization, and disposal of hazardous medical waste so that the new plant would ultimately be able to be put into production, and HBWS would be

able to become a Sharps management device business that utilized the Sharps Container System.

28.   The Chilcotts never personally received any formal notice from HBWS that their (or Sure-Way's) ownership interest had been reduced from 33 & 1/3% to 16.68%, and in fact, they received no notice whatsoever, and did not know that the Defendants have attempted to reduce their interest further until approximately August 2014.

29.   There is substantial antagonism between the Chilcotts and the Defendant Directors and Officers of HBWS.

30.   Despite being shareholders, the Chilcotts have never been (a) informed of annual shareholder meetings, (b) provided with copies of the notices for or the minutes of shareholder meetings, (c) informed of director/board meetings, (d) provided with copies of board meeting minutes, (e) provided with copies of annual financial statements and the like, and/or (f) informed that Dr. Kondo was given the Option (the "Option) to purchase a Key Man Insurance Policy on his life, which (i) was designed to ensure that HBWS would be able to successfully continue should Dr. Kondo die prematurely, and (ii) which was to be owned by HBWS and the premiums for the Key Man Insurance Policy was to be paid by HBWS.

31.   After numerous personal requests, in <u>August 2014</u>, the Chilcotts formally demanded through counsel and finally obtained from HBWS the existing HBWS "Stock Transfer Ledger"; but it is substantially outdated and incorrect, because it indicates the following ownership interests:

| | | |
|---|---|---|
| a. | Jack Maguire: | 80 shares or 27.81% |
| b. | Michael Oxley (trustee): | 80 shares or 27.81% |
| c. | Robert Ohr: | 13.7 shares or 4.76% |
| d. | Dr. Gary Kondo (as trustee, but who is now deceased): | 66 shares or 22.94% |
| e. | Sure-Way Systems: | 48 shares or 16.68% |
| | TOTAL: | 287.7 shares or 100.00% |

32.   However, in spite of that information in the Stock Transfer Ledger, the 2013 federal income tax returns of HBWS indicate that Defendant Kevin Kondo owns 8.93% of the stock of HBWS and Defendant Mary Kondo owns 33%.

33.   Records recently provided to the Chilcotts by HBWS show that Defendant Officer compensation paid, which the Chilcotts believe are grossly excessive and a waste of corporate assets, is:

a.   To Defendant Kevin Kondo: $386,064 (2009), $358,000 (2010), $627,020 (2011), $650,717 (2012), $815,954 (2013), and $824,462 (2014); and

b.   To Defendant Mary Kondo: $153,035 (2012), $182,000 (2013), and $174,770 (2013)

even though, upon information and belief, Defendant Kevin Kondo only works an average of several hours each week providing services to HBWS, and even though Defendant Mary Kondo provides HBWS negligible services.

34.     The average compensation of officers for 35 comparable companies in the United States in the hazardous waste business with comparable revenues to HBWS in ranged from 3.8% to 4.2% if gross revenues during the years 2009-2014, or $107,797 to $151,111 per year.

35.     HBWS paid approximately $9,500.00 per year for the insurance premium on Dr. Gary Kondo's life. Dr. Kondo passed away on June 11, 2011.

36.     Upon information and belief, as part of his compensation HBWS has taken the position that it gave Dr. Kondo an Option to purchase said Key Man Insurance Policy by way of a "Split Dollar Insurance Agreement" (the "Option Agreement"), which was signed by Dr. Kondo (for himself) and Defendant Kevin Kondo, for HBWS as a Director.

37.     Said Option Agreement is void and of no force or effect because it was a waste of a corporate asset, and was in derogation and breach of Defendant's fiduciary duty, as it was based on the familial relationship of father and son and provided a substantial benefit to the dominant and controlling shareholder of HBWS and his family, the Kondo family.

38.     Until the Demand in or about November 2014, the Chilcotts had no knowledge or information regarding the Option Agreement or its terms.

39.     The Option Agreement was a waste of a corporate asset and a usurption by a fiduciary of an opportunity that was intended and designed to benefit HBWS, and which rightfully belonged to HBWS.

40.     HBWS has failed to account for the life insurance proceeds which, upon information and belief, could exceed $1 million.

41.     The Chilcotts bring this action individually and derivatively as shareholders of HBWS to redress the injuries suffered, and to be suffered, by HBWS and the Chilcotts as a direct result of the breaches of fiduciary duty, waste of corporate assets, and the unjust enrichment of the Defendants.  HBWS is named as a nominal defendant solely in a derivative capacity.

42.     The Chilcotts are shareholders of HBWS and will adequately and fairly represent the interest of HBWS and the other shareholders similarly situated in enforcing and prosecuting the rights of HBWS and those shareholders.

43.     The Chilcotts are and have continuously been owners of HBWS stock during the wrongful conduct alleged in this Complaint.

44.     It would be futile for the Chilcotts to make a demand upon Defendant Kevin Kondo and/or Defendant Mary Kondo and/or Defendant Jack Maguire, who are the President/CEO and/or Officers and Directors of HBWS, seeking to cause

Defendants to take legal action against themselves, since taking legal action against themselves (i) would be directly contrary to their own financial and other interests, (ii) would divest themselves of unfettered control of HBWS and their ability to receive excessive compensation from HBWS, (iii) would interfere with Defendants' conspiracy and/or plan and intention to continue to use HBWS as their private bank, and (iv) would require Defendants to cause HBWS to assert claims against themselves and against their co-conspirators and affiliates; such demand has been made.

45.  This action is not a collusive one to confer jurisdiction that the Court would otherwise lack.

46.  Although numerous personal requests had previously been made by the Chilcotts, on or about June 11, 2014, the Chilcotts formally demanded through counsel copies of all relevant documents and financial and business records for their prior four (4) year period, as well as the Minutes of all Shareholders' and Directors' Meetings for that period and the current Stock Transfer Ledger.

47.  After significant delays, Defendants have provided some of the requested documents, but Defendants have failed or refused to provide all of the requested documents, including many of the most significant documents such as (a) HBWS's payroll records including a list of employees/consultants and their annual wages/compensation/benefits, (b) the minutes of all Director and General

Membership meetings since 2008, (c) the payroll records of Defendant Kevin Kondo's company that shared the services of HBWS 's consultant, and (d) the Insurance Policy on the life of Dr. Gary Kondo.

48.    Further, Defendants have failed to properly account for the income (including, but not limited to, the Insurance Proceeds from Dr. Gary Kondo's death in June 2011), expenses, assets, liabilities, and stock ownership/transfers of HBWS, all of which are necessary to value HBWS and the fair price per share of HBWS.

## COUNT I – BREACH OF FIDUCIARY DUTY

49.    The Chilcotts repeat and reallege all allegations contained in this Complaint.

50.    Defendants owe HBWS and the Chilcotts fiduciary obligations. By reason of their dominant and controlling shareholder interest and their fiduciary relationships, Defendants owed and owe HBWS and the Chilcotts the highest obligation of good faith, fair dealing, loyalty, full disclosure, and due care.

51.    Defendants conspired to and/or violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith, and supervision, and have wasted the assets of HBWS.

52.    Defendants conspired to and/or authorized, or by abdication of duty, permitted HBWS to fail to follow corporate formalities, by transferring stock

ownership interests without notification to shareholders, by paying excessive officer, director and consultant compensation and/or benefits, by wasting HBWS assets, by failing to account for all income (including, but not limited to, giving Dr. Gary Kondo the Option regarding the Key Man Insurance Proceeds on Dr. Gary Kondo's life), expenses, assets, and liabilities, and by concealing and/or failing to disclose to the Chilcotts such material facts and/or activities.

53.    As a direct result of Defendants' conspiracy and/or breaches of their fiduciary duties, Defendants have caused, and will continue to cause, HBWS to suffer substantial monetary damages, as well as further and even greater damage in the future, including damage to HBWS' reputation, business, and goodwill.

54.    HBWS and the Chilcotts have been directly and substantially injured by reason of Defendants' conspiracy and/or intentional breach and/or reckless disregard of their fiduciary duties to HBWS. The Chilcotts, as shareholders and representatives of HBWS, seek damages and other relief for HBWS and themselves, in an amount to be proved at trial or hearing.

## COUNT II – GROSS MISMANAGEMENT

55.    The Chilcotts repeat and reallege all allegations contained in this Complaint.

56.    By their actions alleged in this Complaint and other actions or failures to act, Defendants conspired to and/or abandoned and abdicated their

responsibilities and fiduciary duties with regard to prudently managing the assets and business of HBWS in a manner consistent with the operations of a privately held corporation.

57.  As a direct result of Defendants' conspiracy and/or gross mismanagement and breaches of legal duties, HBWS and the Chilcotts have suffered and will continue to suffer damages.

58.  As a direct result of the misconduct and breaches of duties alleged in this Complaint, Defendants are liable to HBWS and the Chilcotts for damages in an amount to be proved at trial or hearing.

## COUNT III – WASTE OF CORPORATE ASSETS

59.  The Chilcotts repeat and reallege all allegations contained in this Complaint.

60.  By engaging in the wrongdoing alleged in this Complaint and other similar wrongful acts or failures to act and/or concealment and/or non-disclosure, Defendants wasted corporate assets by, among other things, (i) paying excessive officer, director and consultant compensation and/or benefits;  (ii) giving Dr. Kondo the Option; (iii) failing to account for at least $1 million in life insurance proceeds;  (iv) failing to recover improperly secured profits; (v) damaging the goodwill and reputation of HBWS; (vi) exposing HBWS shareholders to civil liability based on the alter ego/piercing the corporate veil

legal theory; and (vii) improperly transferring stock and/or options from shareholders without due process or any action by the Directors or shareholders, or notification of the shareholders of material actions by HBWS.

61.    As a direct result of Defendants' wrongful conduct, HBWS and the Chilcotts have suffered and will continue to suffered damages in an amount to be proved at trial or hearing.

## COUNT IV – UNJUST ENRICHMENT
## and BREACH OF THE DUTY OF LOYALTY

62.    The Chilcotts repeat and reallege all allegations contained in this Complaint.

63.    As a result of improperly seizing portions of the Chilcotts' ownership interests, paying excessive Officer, Director, and consultant compensation and/or benefits, and upon information and belief giving Dr. Kondo an Option by the Key Man Insurance Policy on his life and diverting the life insurance proceeds therefrom for one or more of Defendants' personal use, Defendants have been and will continue to be unjustly enriched at the expense of and to the detriment of HBWS.

64.    HBWS and the Chilcotts are entitled to an accounting of all income, expenses, assets, and liabilities of HBWS, including an accounting on the proceeds from said Key Man Insurance Policy.

65.    Accordingly, this Court should order Defendants to account for and disgorge all profits, benefits, and other compensation and benefits (including Key Man Insurance proceeds) obtained by Defendants and/or obtained by consultants of HBWS, and each of them, from January 1, 2009 to the present for their wrongful conduct and fiduciary beaches described in this Complaint.

## COUNT V - CONSTRUCTIVE AND/OR RESULTING TRUST

66.    The Chilcotts repeat and reallege all allegations contained in this Complaint.

67.    One or more Defendants conspired to and/or unjustly hold title to, possess, and/or controls income and assets that rightly belong to HBWS, including but not limited to wrongfully transferred ownership interests, excessive officer, director and consultant compensation and benefits, and Key Man Life Insurance proceeds.

68.    Defendants will be unjustly enriched if they are permitted to hold and retain ownership interests, excessive compensation, benefits, and life insurance proceeds.

69.    Accordingly, HBWS and the Chilcotts are entitled to the entry of an order and judgment of this Court, declaring a constructive and/or resulting trust in their favor over the wrongfully transferred ownership interests, excessive and/or wrongful compensation paid to Officers, Directors, and/or consultants, and said

Key Man Life Insurance proceeds wrongfully received and/or held by Defendants, wherein Defendants shall be deemed to be the constructive and/or resulting trustees for the benefit of HBWS and the Chilcotts.

## COUNT VI – DECLARATORY JUDGMENT

70.     The Chilcotts repeat and reallege all allegations contained in this Complaint.

71.     There is an actual controversy between the Chilcotts and Defendants.

72.     This Court has jurisdiction and authority to issue a declaratory judgment in accordance with 28 U.S.C. section 2201.

73.     The Chilcotts accepted Dr. Gary Kondo's offer for thirty-three and one-third percent (33 & 1/3%) of the common stock of equity interest of HBWS, and provided HBWS with their knowledge and expertise and the exclusive right to use the Sharps Container System in Hawaii; and in addition, the Chilcotts invested approximately $235,000.00, substantial travel and housing expenses, and substantial technical services and are entitled to thirty-three and one-third percent (33 & 1/3%) of HBWS' stock.

74.     There has been no vote or formal action by HBWS with notice to the Chilcotts in accordance with the HBWS by-laws to transfer the Chilcotts' stock or reduce their ownership interest.

75.     The Chilcotts are thirty-three percent (33%) shareholders of HBWS.

WHEREFORE, the Chilcotts pray for judgment as follows:

A.    Against all Defendants, jointly and severally, and in favor of HBWS for the amount of damages sustained by HBWS as a result of Defendants' breaches of fiduciaries duties, gross mismanagement, waste of corporate assets, and unjust enrichment.

B.    Extraordinary and equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions, including declaring the improper compensation, the Option, and other benefits received by the various Defendants to be null and void; attaching, impounding, imposing a constructive or resulting trust on or otherwise restricting the proceeds held and/or received by Defendants so to ensure that the Chilcotts on behalf of HBWS have an effective remedy.

C.    A full and fair accounting of all HBWS income, expenses, assets, and liabilities from 2010 through the date hereof.

D.    Awarding HBWS restitution from Defendants and ordering disgorgement of all distributions, benefits, Key Man Insurance proceeds, and other compensation obtained by each of the Defendants, and was obtained by any consultant of HBWS that was paid by HBWS for the benefit of one or more of the Defendants or their other business(es), as a result of the conduct alleged in this Complaint.

E.     Awarding the Chilcotts the costs and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, and other costs, and expenses.

F.     A declaration that the Chilcotts are thirty-three percent (33%) shareholders of HBWS.

G.     Prejudgment interest in accordance with Hawaii Revised Statutes sections 636-16 and 478-3.

H.     All such other and further relief as the Court deems just and proper.

DATED:     Honolulu, Hawaii, March 4, 2015.

_____
JOHN R. DWYER, JR.
MARK G. VALENCIA
Attorneys for Plaintiffs
**GARY CHILCOTT and DUDLEY CHILCOTT**